# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

LORI S.,[1]

       Plaintiff,

   v.

**NANCY A. BERRYHILL,** Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

      Defendant.

Case No. 6:17-cv-1267-SI

**OPINION AND ORDER**

Merrill Schneider, SCHNEIDER, KERR, & ROBICHAUX, P.O. Box 14490, Portland, OR 97293. Of
Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Jeffery E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Lori S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act (the "Act"). For the following reasons, the Commissioner's

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed an application for DIB and SSI on August 9, 2013, alleging disability beginning on August 1, 2011. AR 22. Plaintiff was born in October 1963 and was 47 years old as of the alleged disability onset date. AR 87, 99, 218, 225. She alleged disability due to depression, emotional and bipolar disorder ("BPD"), post-traumatic stress disorder ("PTSD"), and "learning problems." *See* AR 87, 99. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 22. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* In a decision dated April 22, 2016, the ALJ found Plaintiff not disabled from August 1, 2011, through the date of decision. AR 22-42. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),

404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2011, the application date; additionally, the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2017. AR 24. At step two, the ALJ found Plaintiff had the following severe impairments: bilateral patellofemoral malalignment, right greater than left; planter fasciitis; fibromyalgia; major depressive disorder; PTSD; borderline personality disorder; borderline intellectual functioning; and a history of alcohol abuse. AR 25. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the specific impairments listed in the regulations. *Id.*

The ALJ next determined Plaintiff's RFC and found she could perform light work, with the following limitations:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently in an eight-hour workday. She can sit, stand, and walk each six hours in an eight-hour workday. She requires the option [sic] change positions from sitting to standing at will without interrupting essential tasks. She can never crawl, kneel, and climb ladders, ropes, or scaffolds. She can occasionally crouch and climb ramps or stairs. She can frequently balance. She can never be exposed to hazards such as moving machinery and unprotected heights. She can understand, remember, and carry out simple tasks consistent with Specific Vocational Preparation ("SVP") 1 or 2, which is work that can be learned in 30 days or less. She can perform work that deals primarily with objects rather than people and that does not have a strict production pace. She can perform work that does not require public contact or teamwork assignments.

AR 27. At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work. AR 40. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 41. Specifically, the ALJ found Plaintiff could perform such representative occupations as: garment sorter; office helper; printed product assembler; bagger of garments, laundry; stock checker, apparel; and garment marker. *Id.* Accordingly, the ALJ found Plaintiff was not disabled from August 1, 2011, through the date of the decision, April 22, 2016. AR 42.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that Plaintiff was not disabled. She argues that the ALJ erred in making that determination by: (A) failing to provide clear and convincing reasons to discount Plaintiff's subjective symptoms; (B) improperly evaluating the medical source evidence; (C) failing to provide germane reasons to discount lay witness

evidence; (D) omitting carpal tunnel syndrome from Plaintiff's severe impairments at step two; and (E) failing to craft an RFC and corresponding hypothetical to the vocational expert ("VE") that included all of Plaintiff's limitations at step five.

## A. Plaintiff's Subjective Symptoms

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2017 WL 5180304 (republished Oct. 25, 2017). SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *2; *see also Trevizo*, 871 F.3d at 678 n.5. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence and individual's statements about the intensity, persistence, and limiting effects of symptoms statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *7. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, a reject testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ, applying the first step of the credibility framework, found that "the claimant's severe medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 28. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* In support of that finding, the ALJ offered two rationales: (1) the disparity between Plaintiff's testimony and her treatment record; and (2) the disparity between Plaintiff's claims of debilitating functioning and contemporaneous reports of actual functioning. *Id.* Notably, although the ALJ issued her decision April 22, 2016, the decision makes no mention of SSR 16-3p in its evaluation of Plaintiff's subjective symptom testimony. *Compare* SSR 16-3p, *available at* 2017 WL 5180304, at *13 (explaining SSR 16-3p became effective March 28, 2016) *with* AR 42 (ALJ decision, dated April 22, 2016); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (noting SSRs "do not carry the force of law, but they are binding on ALJs nonetheless." (citation and quotation marks omitted)).

Plaintiff failed to allege with specificity the subjective symptom testimony she believes the ALJ erroneously rejected. Instead, Plaintiff broadly contends she "consistently demonstrated serious mental health symptoms, with multiple long-term contemporaneous treatment providers noting ongoing limitations." Pl.'s Op. Br. at 18. The Commissioner responds the ALJ offered numerous reasons for discounting Plaintiff's subjective symptom testimony, some of which Plaintiff declined to challenge in this appeal.

The ALJ here—over the course of two pages spanning five separate paragraphs—provided sufficient rationales for rejecting specific portions of Plaintiff's symptom testimony.[2] AR 35-36. Regarding Plaintiff's physical symptom testimony, the ALJ's decision highlighted specific portions of Plaintiff's testimony and identified conflicting evidence in the record as the basis for rejecting the testimony. For example, the ALJ noted that Plaintiff alleged that between 2011 and 2013, she was only able to stand for one hour, walk for thirty minutes, and sit for one hour, due to back pain. AR 35. The ALJ, however, cited conflicting medical evidence of benign physical examinations (AR 393-94, 419-20, 439-40, 460), daily walks (AR 762), and Plaintiff flying to Florida and then independently driving back to Oregon in just three days (AR 581, 629-31). The ALJ also highlighted Plaintiff's testimony that in the two years before the hearing in 2016, she was able to stand for ten minutes, walk for five minutes, sit for thirty minutes, and required lying down for 23 hours a day. AR 36. The ALJ again cited conflicting medical evidence of benign physical examinations and a lack of muscle atrophy. *See, e.g.*, AR 36 ("[T]here is no indication that she experienced deconditioning or atrophy consistent with spending most of her time lying down for the past few years."); *see also* AR 510, 582.

Relating to Plaintiff's mental health symptom testimony, the Commissioner first contends that the ALJ rejected Plaintiff's symptom testimony as inconsistent with her activities. The Commissioner relies on the ALJ's recitation of Plaintiff's ability to use public transportation, exercise at a community pool, shop in stores, and attend church as well as bible study in support of the ALJ's rejection of Plaintiff's alleged cognitive and social problems. The record reflects

---

[2] As noted, pursuant to SSR 16-3p, the ALJ was required to credit or reject specific symptom allegations, rather than making over-arching credibility determinations. *See* SSR 16-3p *available at* 2017 WL 5180304, at *11 ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments.").

that this rationale was proper. *See Molina*, 674 F.3d at 1113 ("The ALJ could reasonably conclude that [the claimant's] activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks."). The Commissioner also relies on the ALJ's finding that Plaintiff was not compliant with treatment. This rationale, too, was proper. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("failure to seek treatment or follow a prescribed course of treatment" is a permissible reason to discount subjective symptom testimony); *see also* AR 36 ("The record establishes that the claimant was not compliant with treatment recommendations, as she often stopped taking her mental health medications due to complaints of weight gain.").

Finally, Plaintiff argues that the ALJ erred in rejecting her mental health symptom testimony, citing *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014). Indeed, the Ninth Circuit has explained "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison,* 759 F.3d at 1017. Other than quoting the above language from *Garrison* and broadly taking issue with the ALJ's citation to the medical evidence, however, Plaintiff failed to direct the Court to evidence demonstrating her symptoms waxed and waned over the course of her treatment. Moreover, the ALJ's decision cited to specific examples of symptom improvement with treatment. *See, e.g.*, AR 35 (citing AR 494). Thus, the ALJ's rationale was properly supported by substantial evidence.

In sum, although Plaintiff provides an alternative interpretation of the evidence, the ALJ's interpretation was rational and sufficiently specific to meet the clear-and-convincing standard; in such cases, the Court is compelled to defer to the ALJ. *See Burch*, 400 F.3d at 680-81; *see also* SSR 16-3p.

**B. Medical Source Evidence**

    **1. Acceptable Medical Sources**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.; see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F. 2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may

reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

### a. Examining Physician: Raymond P. Nolan, M.D., Ph.D.

Dr. Nolan conducted a consultative examination of Plaintiff on April 3, 2014. AR 509-11. Dr. Nolan assessed Plaintiff with (1) probable carpal tunnel, with appropriate symptoms and bilateral weakness involving the extensor pollicis; (2) probable fibromyalgia; and (3) bilateral foot pain, noting the examination was compatible with plantar fasciitis, although Plaintiff's history was somewhat atypical. AR 511. Dr. Nolan additionally opined that, due to Plaintiff's fibromyalgia, she would be better served by a sedentary type job where she should be able to sit for greater than six hours in an eight hour day; stand and walk two hours in an eight hour day; and occasionally conduct repetitive hand and wrist activity due to her carpal tunnel. *Id.* The doctor further opined Plaintiff's communication skills were "quite adequate." *Id.*

The ALJ accorded little weight to Dr. Nolan's assessment and provided two rationales for rejecting the opinion. First, the ALJ found the severity of the doctor's assigned limitations was inconsistent with the overall medical record. AR 38. Specifically, the ALJ noted the standing and walking limitation was unsupported by objective findings in the record, as Plaintiff consistently ambulated with a steady gait, with the exception of a brief period of time when Plaintiff was

recovering from right knee surgery. *Id.* Regarding Dr. Nolan's opined repetitive hand and wrist activity limitation, the ALJ noted the limitation was inconsistent with Plaintiff's failure to seek treatment regarding her alleged carpal tunnel syndrome. *Id.*

Second, the ALJ found the severity of the assigned limitations was inconsistent with Plaintiff's "fairly active level of physical functioning in her personal life[.]" *Id.* The ALJ listed four examples: (1) independently managing her activities of daily living; (2) regularly attending church and bible study; (3) traveling to Florida; and (4) visiting with friends at a recreation center. *Id.*

The Commissioner asserts that the ALJ reasonably rejected Dr. Nolan's standing and walking limitation because it was inconsistent with objective evidence. Other than baldly asserting the objective evidence of record was inconsistent with Dr. Nolan's opinion, however, the ALJ failed to identify any relevant inconsistency. For an ALJ to conclude that a medical opinion is not supported by objective findings or evidence, an ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors' are correct."[3] *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 3090200, at \*9 (D. Or. June 20, 2018) (citing *Regennitter v. Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999)). Further, an ALJ "errs when he . . . assigns [a medical opinion] little weight while . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13; *see also, e.g.*, *Trevizo v.*

---

[3] The Commissioner highlights purported objective findings both from Dr. Nolan's examination and other providers that contradict Dr. Nolan's opinion. The argument, however, fails for two reasons. First, the justification advanced by the Commissioner was not articulated by the ALJ in her decision, and the Court must look only to the ALJ's stated reasons, not later arguments provided by the Commissioner. *See Bray*, 554 F.3d at 1225 (reviewing courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). Second, as discussed in more detail herein, Plaintiff's ability to ambulate and balance is not necessarily inconsistent with the standing and walking limitations opined by Dr. Nolan.

*Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017) (finding that the ALJ's assignment of little weight to physician's opinion on ground that it was inconsistent with his treatment notes was error because ALJ failed to point to anything in the treatment notes or the clinical record that contradicted the opinion).

Moreover, the ALJ's decision fails to articulate any material inconsistency. Plaintiff's presentation of a normal gait and balance is not inconsistent with Dr. Nolan's assessment of fibromyalgia and limitation to sedentary work. *See Salazar v. Colvin*, 2016 WL 6892394, at \*4 (W.D. Wash. Nov. 23, 2016) (rejecting "normal gait, station, reflexes, and tandem walk, and did not have joint pain, swelling, effusion, or muscle weakness" as inconsistent with a physician's opined limitations caused *inter alia* by fibromyalgia); *Wesman v. Berryhill*, 2018 WL 1249921, at \*9 (D. Or. Feb. 21, 2018), *adopted sub nom.* 2018 WL 1247866 (D. Or. Mar. 9, 2018) ("[The claimant's fibromyalgia] impairments, however, manifest in the form of pain and fatigue and it is unclear how [the claimant's] . . . ability to ambulate contradicts [the physician's opined] walking limitation."). Further, an independent review of the record undermines the ALJ's conclusion: Plaintiff regularly reported difficulties with standing and walking. *See, e.g.*, AR 511 (assessing chronic bilateral foot pain); AR 573 (discomfort walking); AR 534 (impaired gait); AR 624 (chronic foot pain). Thus, the ALJ's rationale for rejecting Dr. Nolan's standing and walking limitation as inconsistent with the "overall medical evidence of record" fails to meet the specific-and-legitimate standard.

Plaintiff also argues that the ALJ erroneously rejected Dr. Nolan's limitations regarding Plaintiff's repetitive hand and wrist activity. The Commissioner asserts that the ALJ properly rejected those limitations based upon Plaintiff's failure to seek or receive treatment for carpal tunnel syndrome. Although Plaintiff correctly notes Dr. Nolan's examination found appropriate

signs for his diagnosis of carpal tunnel syndrome, the Commissioner's argument that Plaintiff

has identified no evidence that she sought treatment for her hands or wrists is well taken. As the

regulations direct, the amount of treatment a claimant receives is "an important indicator of the

intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3). The ALJ therefore provided a specific and legitimate rationale for discrediting

Dr. Nolan's opined repetitive hand and wrist limitation. *See Clark v. Astrue*, 2010 WL 842322, at

*6 (W.D. Wash. Mar. 8, 2010) (lack of treatment is a permissible rationale to discount medical

opinion evidence).[4]

### b. Examining Psychologist: Gregory A. Cole, Ph.D.

Dr. Cole conducted a consultative neuropsychological examination of Plaintiff on

February 26, 2016, after the administrative hearing. AR 85, 879-87. Dr. Cole diagnosed Plaintiff

with (1) major depressive disorder, recurrent episodes; (2) severe panic disorder; (3) PTSD,

without dissociative symptoms; (4) borderline intellectual functioning; and (5) rule out

borderline personality disorder (by history). AR 886. Dr. Cole opined Plaintiff had no restriction

in her ability to understand, remember, and carry out simple instructions as well as no restriction

in her ability to make judgments on simple work-related decisions. AR 890. He further opined

Plaintiff would have moderate restrictions in her ability to understand, remember, and carry out

---

[4] The Commissioner seems to rely on the ALJ's finding Plaintiff's activities of daily living, "which included independently managing her activities of daily living, regularly attending church and bible study, traveling to Florida, and visiting with friends at the rec [sic] center," (AR 38), only in support of the ALJ's rejection of Dr. Nolan's opined repetitive hand and wrist limitations, and does not cite those findings in support of the ALJ's rejection of Dr. Nolan's standing and walking limitations. In any event, the ALJ's decision did not articulate with sufficient specificity how Plaintiff's activities contradicted any of Dr. Nolan's conclusions regarding standing and walking limitations. *See Rowland v. Berryhill*, 2017 WL 5297946, at *4 (D. Or. Nov. 13, 2017) ("Although the ALJ previously noted that [the claimant] was able to do household chores such as cooking, cleaning, and laundry, as well as grocery shopping, driving, and hunting, the ALJ failed to explain how any of those activities were inconsistent with [the treating physician's] findings.").

complex instructions as well as marked restrictions in her ability to make judgments on complex work-related decisions. *Id.* Further, Dr. Cole opined Plaintiff would have moderate restrictions interacting appropriately with the public, supervisors, and co-workers as well as marked restrictions responding appropriately to unusual work situations and to changes in routine. *Id.*

The ALJ assigned significant weight to Dr. Cole's assessment based upon the opinion's consistency with the medical evidence. Plaintiff asserts, however, that the ALJ failed to account for all of Dr. Cole's opined limitations and that when Dr. Cole's opinion is properly considered, Plaintiff would be off task more than 10 percent of the workday and is thus disabled. The Commissioner correctly notes that Dr. Cole did not opine Plaintiff would be off task during the workday.

For the first time in reply, Plaintiff argues that she had substantial loss of ability to meet several basic work related activities as defined by SSR 85-15.[5] As an initial matter, courts "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). In any event, the ALJ did not err because she reasonably "translat[ed] and incorporate[ed Dr. Cole's] clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

---

[5] SSR 85-15 states in relevant part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15 *available at* 1958 WL 56857 at *4 (January 1, 1985).

Dr. Cole opined that Plaintiff had no restriction in her ability to understand, remember, and carry out simple instructions, but would have difficulty understanding, remembering, and carrying out complex instructions. AR 890. The ALJ appropriately accounted for Dr. Cole's assessment by limiting Plaintiff to SVP 1 or 2 occupations. AR 27; *see also Rounds*, 807 F.3d at 1006 (holding "moderate limitations in [the claimant's] ability to accept instructions and respond appropriately to criticism from supervisors" was adequately translated into an RFC that limited the claimant to "one to two step tasks with no public contact, no teamwork and limited coworker contact"). Regarding Dr. Cole's assessment that Plaintiff would have difficulties interacting with the public, supervisors, and coworkers, as well as changes in a routine work setting, the ALJ accounted for those limitations in limiting Plaintiff to work that: (1) dealt primarily with objects rather than people; (2) did not require public contact; and (3) did not require teamwork assignments. AR 27, 891. Thus, the ALJ appropriately accounted for Dr. Cole's opinion. *See Rounds*, 807 F.3d at 1006.

## 2. Non-Acceptable Medical Sources

SSR 06-03p[6] in effect at the time Plaintiff filed her claim defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, *available at* 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists,"

---

[6] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 5844-01; 82 F. Reg. 15132-01.

are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p.

The testimony of "other" medical source witnesses, like other lay witness testimony, may not be rejected without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony lay witnesses, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th

Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative

of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

reached a different disability determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the

ALJ should consider the following factors: (1) "how long the source has known and how

frequently the source has seen the individual"; (2) "how consistent the opinion is with other

evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion";

(4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of

expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to

support or refute the opinion." SSR 06-03p. The fact that a source is an "acceptable medical

source" generally entitles that source's opinions to more weight than the opinions from other

medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for weighing

opinion evidence, an ALJ may properly find that an opinion from a medical source who is not an

"acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the
> opinion of a medical source who is not an acceptable medical
> source if he or she has seen the individual more often than the
> treating source and has provided better supporting evidence and a
> better explanation for his or her opinion.[7]

*Id.* Lay witness testimony regarding the severity of a Plaintiff's symptoms or how impairments

affect a Plaintiff's ability to work is competent evidence that an ALJ must take into account.

*Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 918-19). "Depending on the particular facts

---

[7] Giving more weight to the opinion of a non-acceptable medical source over a treating medical source does not violate the treating source rules under 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source may outweigh the opinion of an acceptable medical source, including the medical opinion of a treating source." SSR 06-03p, at *5 (internal quotations marks omitted).

### a.   Treating Psychiatric Nurse: Donna Robbins, MS, MSN, PMHNP-BC[8]

Nurse Robbins completed a medical source statement based upon her two-and-one-half-year treating history with Plaintiff. AR 841-43. Nurse Robbins opined that Plaintiff was: mildly limited in her ability to understand, remember, and carry out simple instructions; moderately limited in her ability to make judgements on simple work-related decisions as well as understand and remember complex instructions; and markedly limited in her ability to carry out complex instructions as well as in her ability to make judgments on complex work-related decisions. AR 841. Further, Nurse Robbins opined that Plaintiff would have mild-to-moderate limitations in her ability to interact appropriately with the public as well as moderate-to-severe limitations in her ability to interact appropriately with supervisors and co-workers. Additionally, Nurse Robbins opined that Plaintiff would have moderate-to-severe limitations responding appropriately to unusual work situations and to changes in routine. AR 842.

The ALJ accorded only partial weight to Nurse Robbins' assessment and provided three rationales for rejecting the opinion. AR 39. First, the ALJ explained that Nurse Robbins was not an acceptable medical source. *Id.* Second, the ALJ concluded that the opinion's cognitive and social functioning limitations were inconsistent with the medical evidence that Plaintiff "responded well to mental health treatment." *Id.* Third, the ALJ found that Plaintiff's activities of daily living were inconsistent with Nurse Robbins' assessment. *Id.*

---

[8] Nurse Robbins is a Board Certified Psychiatric Mental Health Nurse Practitioner.

The ALJ's first rationale was not a permissibly germane reason to discount Nurse Robbins' opinion. An ALJ may not reject an opinion solely on the basis it is proffered by a non-acceptable medical source. *See Adams v. Colvin*, 2015 WL 852831, at *3 (D. Or. Feb. 26, 2015), *aff'd sub nom.* 725 F. App'x 541 (9th Cir. 2018); s*ee also Tully v. Astrue*, 2013 WL 1314197, at *7 (D. Id. Mar. 27, 2013) ("The ALJ cannot discount the opinion of [a treating nurse practitioner] simply because it falls into the category of 'not an acceptable medical source' for some purposes.").

Plaintiff argues that the ALJ impermissibly "selectively focused" on medical evidence that tended to "suggest non-disability," and supported her findings with an "inaccurate characterization of the evidence." Pl.'s Br. at 12 (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001), *as amended* (Aug. 9, 2001); *Regennitter*, 166 F.3d at 1297). The Commissioner responds by noting that Nurse Robbins' marked limitations were inconsistent with treatment notes indicating that Plaintiff improved with treatment and medication. AR 585-86 (Nurse Robbins noting Plaintiff "seems to be doing very well. She appears more stable in her mood, and much of the benefit has to do with her involvement in psychotherapy . . . ."). Although the ALJ's decision does not specifically invoke all of the factors outlined in SSR 06-03p, inconsistency with medical evidence is sufficient to discount an opinion. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.2005); *see also Schow v. Astrue*, 272 F. App'x 647, 651 (9th Cir. 2008) ("The ALJ stated that [the Nurse Practitioner] was not an 'acceptable medical source' and cited inconsistencies between her opinion and the medical record."); SSR 06-03p (relevant factors for considering opinion evidence include: "How consistent the opinion is with other evidence"). Moreover, contrary to Plaintiff's contention, the ALJ did not wholly reject Nurse Robbins' opinion; in her decision, the ALJ discussed Nurse Robbins' conclusions

regarding Plaintiff's "difficulties with complex tasks" and "social interaction," and crafted the RFC to account for those conclusions. *Compare* AR 39 ("However, I note that [Nurse Robbins'] opinion regarding [Plaintiff's] difficulties dealing with complex tasks and some social interaction is reflected in the residual functional capacity.") *with* AR 27 (RFC limiting Plaintiff to: understanding, remembering, and carrying out simple SVP 1 or 2 tasks; performing work that deals with objects rather than people and work that does not require public contact or teamwork assignments).[9] The ALJ therefore provided a sufficiently specific and germane reason for assigning Nurse Robbins' opinion only partial weight.

### b. Treating Mental Health Therapist: Annalisa Decina, LPC

Ms. Decina served as Plaintiff's therapist from at least September 2013 through March 2016. *See* AR 502, 893. In March 2016, Ms. Decina wrote Plaintiff's counsel a letter in response to Plaintiff's consultative neuropsychological examination. AR 893-94. In her letter, Ms. Decina opined Plaintiff "would struggle a great deal vocationally" and that she would continue to "struggle with her ability to self-manage, focus, concentrate, and tolerate general conflicts that can be found in the work place as well." AR 894. Ms. Decina's letter, however, did not include any specific functional limitations.

The ALJ assigned the opinion little weight and provided three rationales for rejecting the opinion. AR 39-40. First, the ALJ explained that Ms. Decina was not an acceptable medical

---

[9] Plaintiff also takes issue with the ALJ's reliance on her activities of daily living. The ALJ's identification of conflicts between Plaintiff's activities of daily living and Nurse Robbins' opined limitations, however, was an additional independently germane reason to discount the opinion. *See Adams*, 2015 WL 852831, at *3 ("[T]he ALJ further described the inconsistencies between [the QMHP counselor's opinion] and [the claimant's] daily activities by noting that Plaintiff frequently goes on outings with others and shops with friends."). The ALJ's decision explicitly relied on multiple daily activities that were inconsistent with Nurse Robbins' opinion. AR 39; *see also* AR 284-85, 572, 349, 488, 503, 570, 778, 792, 800, 868. The ALJ did not err in this respect.

source. AR 40. Second, the ALJ noted that Ms. Decina's opinion was unsupported by treatment notes, which showed Plaintiff's mental health symptoms responded positively to treatment and that she was able to apply learned skills to her daily life. *Id.* Third, the ALJ found that Ms. Decina's opinion regarding the severity of Plaintiff's cognitive and social limitations was inconsistent with her daily activities. *Id.*

As discussed above, the ALJ's first rationale was not a germane reason to discount Ms. Decina's opinion. See *Adams*, 2015 WL 852831, at *3. The ALJ's two additional rationales, however, were germane reasons to discount Ms. Decina's testimony, particularly in light of the fact that Ms. Decina failed to include specific concrete functional limitations in her opinion. First the ALJ properly rejected Ms. Decina's opinion because of conflicts with treatment notes "on the grounds [that the] treatment notes [do not] support the degree of limitation proposed." *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016). Second, the ALJ's identification of conflicts with daily activities was also a proper rationale to reject the opinion. *Adams*, 2015 WL 852831, at *3. The ALJ provided a sufficiently specific and germane reason for assigning Ms. Decina's opinion only little weight.

### c. Treating Nurse: Tammy Miller

Nurse Miller completed physical and mental medical source statements in September 2014. AR 512-18 (physical); 519-21 (mental).[10] Nurse Miller opined that Plaintiff could sit for two hours at any one time for a total of five hours in an eight hour workday; stand one hour at any one time for a total of one hour in an eight hour workday; walk for two hours at any one time for a total of two hours in an eight hour workday; frequently reach, handle, finger, and feel; occasionally push and pull with her upper extremities; and frequently operate foot

---

[10] Plaintiff does not challenge the ALJ's findings rejecting Nurse Miller's conclusions of Plaintiff's mental limitations, which the ALJ assigned significant weight.

controls with her right lower extremity. AR 513-14. Nurse Miller further opined, at the time she completed her medical source statement, that Plaintiff required the use of a wheelchair and crutches to ambulate. AR 513.

The ALJ accorded little weight to Nurse Miller's conclusions as to Plaintiff's physical limitations, providing two rationales. AR 38-39. First, the ALJ again explained Nurse Miller was not an acceptable medical source. AR 38. Second, the ALJ found Nurse Miller's opinion was "based on [Plaintiff's] functioning after right knee surgery and subsequent recovery," noting that the medical evidence showed Plaintiff "responded well to surgery and that her limitation did not last more than 12 months as she was no longer using an assistive device at the hearing." AR 39-40.

Plaintiff essentially argues that the ALJ erred by failing properly to evaluate Nurse Miller's sitting, standing, and walking limitations, as well as her frequent reaching, handling, fingering, and feeling limitations. The Commissioner responds that the ALJ properly rejected Nurse Miller's physical limitations because, following knee surgery, the evidence showed Plaintiff's physical limitations did not last for 12 months.

As previously noted, the ALJ's first rationale was not a germane reason to discount Ms. Decina's opinion. *See Adams*, 2015 WL 852831, at *3. The ALJ's second rationale similarly does not meet the requisite standard for two reasons. First, the ALJ erred in failing to comment at all on Nurse Miller's reaching, handling, fingering, and feeling limitations. *See Stout*, 454 F.3d at 1053 (ALJ may not disregard evidence without comment). Second, the Commissioner and the ALJ mischaracterize the record. The ALJ's decision incorrectly states Nurse Miller opined regarding Plaintiff's limitations "after [Plaintiff's] right knee surgery and subsequent recovery." AR 38. A review of the relevant records, however, reveals Nurse Miller completed her medical

source opinion statement on September 3, 2014. AR 521. Plaintiff's right knee surgery occurred eleven months afterwards on August 6, 2015. AR 778, 874. The Commissioner concedes this error, but seemingly maintains that whatever limitations Plaintiff's knee caused "did not last longer than 12 months." The argument lacks merit. On September 29, 2015—more than a year after Nurse Miller offered her opinion—Plaintiff was still using crutches and was just beginning to walk following her surgery.[11] AR 874 ("[Plaintiff] here today on crutches, had her knee surgery done, and reports there was a lot more damage in her knee than anticipated."). Thus, the ALJ failed provided a germane reason for assigning Nurse Miller's physical limitations opinion only little weight.[12]

## C. Non-medical Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*, 454 F.3d at 1053. The standards for lay witness testimony are the same as discussed above regarding "other" medical source testimony. Lay witness testimony regarding a claimant's symptoms or how an impairment

---

[11] The Commissioner's citation to additional treatment providers describing Plaintiff's "gait and stance as normal" is a *post hoc* rationale, upon which the Court may not affirm. *Bray*, 554 F.3d at 1225.

[12] The Commissioner's contention that an ALJ is not obliged to "parse and discuss each suggested limitation from a medical source" is generally true where there is good reason to reject the entirety of an opinion such as marginal relevance or bias. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (rejecting entirety of other source opinion in part because it was two years beyond the relevant time period). That general proposition, however, is not without exceptions and at least one district court has required an ALJ to address specific portions of "other source" opinions in order properly to discount specific portions of the opinion. *Compare Dale*, 823 F.3d at 945 ("Typically, of course, the reason for discounting an 'other' source applies to the entire testimony of the witness.") *with id.* ("Here, however, the situation is different. The ALJ himself divided [the nurse practitioner's opinion] into two parts[.]") *and McCann v. Colvin*, 111 F. Supp. 3d 1166, 1174 (W.D. Wash. 2015) ("When an ALJ discounts an [other source] opinion for being inconsistent with the objective evidence in the record, he must discount only those portions of the opinion that are actually inconsistent, not those parts which are uncontradicted.").

affects her ability to work is competent evidence that cannot be rejected without comment, and

requires germane reasons, explained individually or in the aggregate. *Id.*; *Molina*, 674 F.3d

at 1114-15. An error by the ALJ in rejecting or ignoring lay witness testimony may be harmless

where other similar testimony was properly discounted or the testimony is contradicted by more

reliable medical evidence the ALJ credited, although ignoring uncontradicted highly probative

lay witness testimony cannot be harmless unless the court is confident no reasonable ALJ, when

crediting such testimony, could reach a different disability determination. *Molina*, 674 F.3d

at 1118-19; *Stout*, 454 F.3d at 1056.

Plaintiff's mother, Elizabeth G., completed a third party function report. According to

Plaintiff, this lay testimony report included the following limitations: previously being outgoing,

but now withdrawn (AR 297, 300); depression and PTSD (AR 297); suicidal ideation (AR 298);

lacking enjoyment while cooking (*id.*); completing thirty minutes of chores every two days (*id.*);

only going outside for appointments, grocery shopping, and church (*id.*); walking one block

before necessitating a rest break (AR 302); experiencing nausea, leg cramps, and weight gain

from prescribed medications (*id.*); personality disorder, PTSD, and alcohol abuse (AR 303). The

ALJ considered this evidence, but found nothing in the testimony indicated that the RFC should

include additional limitations. AR 37. Specifically, the ALJ found the lay testimony regarding

Plaintiff's daily activities was consistent with the ALJ's discussion of the evidence in her

decision and that Plaintiff's mental health limitations were "consistent with the medical of record

and accounted for in the residual functional capacity." *Id.*

The ALJ's findings here were conclusory and lacked specificity. *Bruce v. Astrue*, 557

F.3d 1113, 1115 (9th Cir. 2009) ("If an ALJ disregards the testimony of a lay witness, the ALJ

must provide reasons that are germane to each witness. Further, the reasons germane to each

witness must be *specific*." (emphasis added; citation and quotation marks omitted)); *see also*

*Stout,* 454 F.3d at 1054 (explaining that "the ALJ . . . is required to provide *specific* reasons for

rejecting lay testimony" (emphasis added)). Thus, other than asserting consistency with the

ALJ's own RFC formulation, the path that led the ALJ to this conclusion cannot "reasonably be

discerned." *Alaska Dep't of Envtl. Conserv.*, 540 U.S. at 497; *see also Treichler v. Comm'r of*

*Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not

be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine

whether the ALJ's conclusions were supported by substantial evidence.").

Any error, however, is harmless. Elizabeth G.'s testimony mirrored that of Plaintiff's

own testimony, which the ALJ gave clear and convincing reasons to reject. *Molina*, 674 F.3d

1122 (finding any error harmless where lay testimony does "not describe any limitations beyond

those [described by a claimant], which the ALJ discussed at length and rejected based on well-

supported, clear and convincing reasons"). In other words, fully crediting Elizabeth G.'s

testimony would not affect the decision because her statements do not include any additional

functional limitations not already considered by the ALJ. *See Deana M. v. Berryhill*, 2018

WL 3745821, at *9 (D. Or. Aug. 7, 2018).

**D. Severe Impairments at Step Two**

At step two, the claimant bears the burden of establishing that she has a severe

impairment by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or

combination of impairments is "not severe *only if* the evidence establishes a slight abnormality

that has no more than a minimal effect on an individual's ability to work." *Webb v.*

*Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is

required to consider the combined effect of all the claimant's impairments on her ability to

function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the

ALJ determines that a claimant has any severe impairment at step two, the sequential analysis

proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not.

SSR 96-8p, *available at* 1996 WL 374184 (July 2, 1996). When an ALJ fails to identify a severe

impairment at step two, but nonetheless considers at subsequent steps all of the claimant's

impairments, including the erroneously omitted severe impairment, the error at step two is

harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Plaintiff contends that the ALJ erred by not finding "carpal tunnel, with bilateral

weakness involving the extensor pollicis brevis" a severe impairment at step two. The

Commissioner responds arguing error at step two cannot be harmful when step two is resolved in

a claimant's favor and the ALJ considers the nonsevere impairment in the subsequent steps of

the sequential analysis. Taking the latter assertion first, the Commissioner failed to articulate

with sufficient specificity how the ALJ considered Plaintiff's carpal tunnel syndrome during the

subsequent steps. Indeed, a review of the ALJ's decision leads to the opposite conclusion: The

ALJ rejected medical evidence that suggested Plaintiff suffered from carpal tunnel, and

discounted the two medical opinions that found plaintiff had repetitive hand and wrist

limitations. *See, e.g.*, AR 25, 37-39.

As to the harmfulness of the omission of carpal tunnel syndrome, the Commissioner is

partially correct: An error at step two can be harmless when step two is resolved in a claimant's

favor. *See Lewis*, 498 F.3d at 911. In order to consider the omission harmless, however, the ALJ

*must* consider all of the effects of the omitted impairment at subsequent steps, and the failure to

do so constitutes reversible error. *Cf. Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012)

(holding that "the residual functional capacity determination was incomplete, flawed, and not

supported by substantial evidence in the record" when an ALJ improperly excluded an impairment at step two).

Plaintiff has identified medical evidence not properly accounted for in the ALJ's decision in the form of Nurse Miller's reaching, handling, fingering, and feeling limitations. Assuming without deciding such a limitation could be caused by carpal tunnel syndrome, the Court cannot conclude that the ALJ considered the effects of this omitted impairment at steps four and five. Accordingly, the error at step two by omitting carpal tunnel syndrome from Plaintiff's severe impairments was not harmless. *See Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 (9th Cir. 2014) (noting that a harmless error is only when "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination" (quoting *Tommasetti*, 533 F.3d at 1038)).

**E. The ALJ's Step Five Analysis**

The RFC is the maximum that a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.145 (a)(1), 416.945(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. *Lingenfelter*, 504 F.3d at 1041; *Osenbrock,* 240 F.3d at 1163-65. Plaintiff argues that the ALJ's hypothetical to the VE failed to include all of her limitations, and, thus, the VE's testimony lacked evidentiary value. Given the errors discussed above, the RFC, and by extension the hypothetical posed to the VE, was not supported by substantial evidence and this case must be remanded.

**F. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408. Further, when remanding for further development of the record, the district court has the discretion to remand on an open record. *See Burrell v. Colvin*, 75

F.3d 1133, 1141 (9th Cir. 2014) (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings" (citing *Garrison*, 759 F.3d at 1021)).

Plaintiff argues that this case should be remanded for an immediate payment of benefits. Specifically, Plaintiff argues that when properly considering the rejected evidence, it becomes clear that Plaintiff is incapable of working on a regular and continuing basis and thus is disabled. The Court disagrees, particularly given the "inconsistencies between the claimant's testimony and the medical evidence in the record[.]" *Dominguez*, 808 F.3d at 408.

The ALJ failed to provide legally sufficient reason for rejecting medical opinion evidence, erroneously excluded carpal tunnel syndrome from Plaintiff's severe impairments at step two, and failed to account for all of Plaintiff's limitations at step five. The ALJ, however, should be given the opportunity properly to consider that evidence, and incorporate it into Plaintiff's RFC, and, if necessary, take new testimony from a vocational expert regarding Plaintiff's ability to perform jobs that exist in significant numbers in the national economy. Because there are outstanding issues that must be resolved before a determination of disability can be made, the case is remanded on an open record for further proceedings consistent with this opinion.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 2nd day of October, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge